IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TREVIA JOHNSON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 16-cv-00215 |
| ) | |
| ARCELORMITTAL LLC, ) | **JURY DEMANDED** |
| ARCELORMITTAL USA LLC, and ) | |
| ARCELORMITTAL BURNS ) | |
| HARBOR LLC ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Trevia Johnson ("Plaintiff"), by and through her undersigned attorneys, and for her Complaint at Law against the Defendant, ArcelorMittal LLC, Arcelor Mittal USA LLC, and ArcelorMittal Burns Harbor LLC (collectively, "Defendant"), and states as follows:

## NATURE OF THE CASE

1. All causes of action for Plaintiff arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended.

2. Counts I, II and V below additionally arise under 42 U.S.C. §1981 of the Civil Rights Act of 1866, *et seq.* ("Section 1981").

## JURISDICTION AND VENUE

3. That this court has jurisdiction over this matter by virtue of 28 U.S.C § 1331.

4. Venue in the Northern District of Indiana, Hammond Division is proper, as the claim for relief arose in Burns Harbor, Lake County, Indiana.

5. That all conditions precedent have been fulfilled by Plaintiff, including the filing of a Complaint with the Indiana Civil Rights Commission ("ICRC"), which investigated same.

6. At all times relevant herein, Plaintiff was in a contractual relationship with Defendant within the meaning of 42 U.S.C. § 1981.

7. That all conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. *See* Exhibit 1.

## PARTIES

8. Plaintiff is female and a resident of Indiana.

9. That Defendant is duly registered to conduct business in the state of Indiana.

10. At all times pertinent herein, Defendant has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

11. That at all times pertinent herein, Plaintiff was employed by Defendant.

12. That Plaintiff was hired by Defendant as a "utility person" in approximately September 2010, and was promoted to the position of "operating technician" in approximately March 2011.

13. That at all times pertinent herein, Donna Tapper ("Tapper"), white/Caucasian female, Eddie Tyler ("Tyler"), African-American male, and Calvin Hastings ("Hastings"), white/Caucasian male, were employed by Defendant.

14. That at all times pertinent herein, Timothy Candiano ("Candiano"), white/Caucasian male, was employed by Defendant as a Division Manager.

2

15. That at all times pertinent herein, Candiano supervised Plaintiff's work, and had the power to hire employees, discipline employees, recommend discipline for employees, terminate employees, and recommend termination of an employee.

### COUNT I – RACIAL HARASSMENT

16. Plaintiff incorporates the preceding paragraphs by reference here.

17. Plaintiff brings this count against Defendant pursuant to 42 U.S.C. §1981 and Title VII.

18. During all times relevant herein, Plaintiff's job performance met Defendant's legitimate business expectations and standards.

19. In approximately March 2011, Tapper, a co-worker of Plaintiff, began addressing Plaintiff, and making statements about Plaintiff in her presence, that included crude and offensive racial slurs.

20. On a daily or near-daily basis from March 2011 through 2014, Tapper made statements to Plaintiff such as "black niggers should not be here," and regularly called Plaintiff "black bitch," "nigger," and "monkey."

21. From approximately March 2011 through 2014, Tapper frequently and purposely created unsafe situations for Plaintiff in the workplace.

22. In approximately August 2012, Tapper intentionally created a dangerous situation and threatened Plaintiff's safety when Tapper opened one of the "coke ovens" at Defendant's facility; when Plaintiff asked Tapper to close the oven, Tapper told her "fuck you, nigger" and "bitch, mind your own business."

23. On multiple occasions from 2011 through 2014, Plaintiff made complaints about Tapper's behavior; when Candiano was told of Plaintiff's complaints, he would regularly reply that "the black bitch is bitching again."

3

24. At all times relevant herein, employees at Defendant's Burns Harbor facility were prohibited from complaining directly to plant management, and instead obligated to file grievances with the union, USW Local 6787.

25. On one occasion in 2012 or 2013, a co-worker of Plaintiff broke into her workplace locker, scattered Plaintiff's personal belongings around the locker room, and sprinkled baby powder around the area surrounding the locker; the word "nigger" had been traced in the baby powder.

26. Following the locker break-in, Plaintiff complained about the incident to Plant Protection Services, but the incident was not investigated, no one was disciplined, and Defendant took no responsive action.

27. At all times relevant herein, Defendant made overtime work available to employees, who could sign up for overtime shifts by signing their name on a form posted at the worksite; employees whose names were listed on the form were then registered to work during the relevant overtime shift.

28. From approximately March 2011 through April 2014, Hastings and six other white/Caucasian male co-workers of Plaintiff regularly attempted to subject Plaintiff to disciplinary action by signing Plaintiff's name on the overtime form.

29. On multiple occasions between March 2011 and April 2014, when Plaintiff's name was added to the overtime form unbeknownst to her, Plaintiff would inform Candiano or his assistant Mike Zmuda that she was unable to work the overtime shift in question; Candiano or Zmuda would then tell Plaintiff that it was "too late" to make changes to the overtime schedule and that she would be obligated to work that shift.

30. Non-black employees' names were not routinely added to the overtime form unbeknownst to the employee, and were not obligated to work additional overtime shifts that they themselves had not sought.

31. In approximately early 2013, Hastings stood on top of a coke oven battery at Defendant's worksite, opened the lid, and told Plaintiff "hey nigger, you should get here and put this lid on the oven like you're supposed to;" when Plaintiff ignored him, Hastings forcefully shoved Plaintiff toward the battery by pressing his hands against her breasts.

32. After shoving her, Hastings then picked up a heavy metal T-bar and threw the T-bar at Plaintiff in an attempt to hit her; Plaintiff dodged the T-bar and avoided being hit.

33. Plaintiff filed a grievance with the union in response to this incident, which pursuant to the existing collective bargaining agreement was communicated to Defendant; Defendant took no action responsive to Plaintiff's grievance, and when Plaintiff attempted to follow up on her grievance, she was told that her written grievance had been lost.

34. From early 2013 through April 2014, Hastings and six other white/Caucasian male co-workers subjected Plaintiff to a constant barrage of harassing, crude, and offensive conduct.

35. From early 2013 through April 2014, Hastings and six other white/Caucasian male co-workers regularly threw away Plaintiff's packed lunch; placed Plaintiff's personal belongings on top of a coke oven so that they burned; and left notes for her inscribed with racial slurs such as "black whore," pornographic photos of naked African-American women, and bananas and discarded banana peels, in the area in which Plaintiff took lunch breaks.

36. In approximately 2013, Hastings threatened Plaintiff that "I will pull out my dick and piss on you. You are a monkey and we do not care about you."

37. Defendant condoned racial harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, discipline, and instructions to its employees.

38. That Defendant's treatment of Plaintiff was motivated by evil motive and intent and was in reckless and callous indifference to Plaintiff's federally protected rights.

39. That the racial harassment to which Plaintiff was subjected to at the hands of Defendant and their agents, representatives and employees, was persistent in nature, unwelcome, extremely offensive, humiliating, and had the effect of creating a hostile and intimidating work environment for Plaintiff.

40. That said continuous and persistent racial discrimination and harassment adversely affected the terms and conditions of Plaintiff's employment.

41. That as a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends and family.

42. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her friends, family, and former co-workers, damage to her reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of life.

43. That Defendant further subjected Plaintiff to illegal, inferior and miserable terms and conditions of employment due to her race in violation of Section 1981 and Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal remedies for relief:

   a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

   b. Order a permanent injunction prohibiting Defendant from further acts of racial discrimination and racial harassment.

   c. Award Defendant reinstatement, lost wages, including back pay, front pay and lost fringe benefits, and including, without limitation, any lost benefits with applicable prejudgment and statutory interest.

   d. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

   e. Award Plaintiff a judgment against Defendant for compensatory damages.

   f. Grant judgment against Defendant for punitive damages for willful and wanton conduct.

   g. Grant such other and further relief as this Court deems just and proper.


## COUNT II – RACE DISCRIMINATION

44. Plaintiff incorporates the preceding paragraphs by reference here.

45. Plaintiff brings this count against Defendant pursuant to 42 U.S.C. §1981 and Title VII.

46. During all times relevant herein, Plaintiff's job performance met Defendant's legitimate business expectations and standards.

47. On multiple occasions between March 2011 and April 2014, when Plaintiff's name was added to the overtime form unbeknownst to her, Plaintiff would inform Candiano or his assistant Mike Zmuda that she was unable to work the overtime shift in question;

Candiano or Zmuda would then tell Plaintiff that it was "too late" to make changes to the overtime schedule and that she would be obligated to work that shift.

48. Non-black employees' names were not routinely added to the overtime form unbeknownst to the employee, and were not obligated to work additional overtime shifts that they themselves had not sought.

49. Plaintiff was subjected to pervasive discrimination on the basis of her race, black, throughout her employment with Defendant, in the form of coarse, crude, and offensive language, and inferior treatment.

50. Non-black employees similarly situated to Plaintiff were not subjected to racially discriminatory and racially harassing behavior.

51. Non-black employees similarly situated to Plaintiff who did not complain of racial discrimination or harassment were treated more favorably than Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal remedies for relief:

   a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

   b. Order a permanent injunction prohibiting Defendant from further acts of racial discrimination and racial harassment.

   c. Award Defendant reinstatement, lost wages, including back pay, front pay and lost fringe benefits, and including, without limitation, any lost benefits with applicable prejudgment and statutory interest.

   d. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

   e. Award Plaintiff a judgment against Defendant for compensatory damages.

   f. Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g. Grant such other and further relief as this Court deems just and proper.

## COUNT III – SEXUAL HARASSMENT

52. Plaintiff brings this count against Defendant pursuant to Title VII.

53. From approximately March 2011 through approximately April 2014, Plaintiff was subjected to unwelcome sexual advances, sexual comments and other physical and verbal conduct of a sexual nature from her co-worker Eddie Tyler ("Tyler"), based on her sex, female.

54. From approximately March 2011 through approximately April 2014, Tyler regularly and frequently followed Plaintiff around Defendant's facility and stared at her as she completed her job tasks.

55. From approximately March 2011 through approximately April 2014, Tyler regularly and frequently waited for Plaintiff outside the women's bathroom or near her locker at Defendant's facility so as to watch her or surprise her.

56. From approximately March 2011 through approximately April 2014, Tyler regularly and frequently made offensive sexual statements to Plaintiff, and told Plaintiff that "I want to fuck you;" "damn, you have a fat ass;" "you have nice titties;" and "your mouth is great enough for my dick to fit in."

57. From approximately March 2011 through approximately April 2014, Tyler regularly and frequently exposed Plaintiff to unwanted physical touching, by grabbing Plaintiff's buttocks; by approaching Plaintiff from behind and fondling her breasts; and by pulling Plaintiff's hair in an attempt to forcefully kiss her.

58. In response to Tyler's behavior, Plaintiff routinely went out of her way to avoid encountering Tyler at the workplace, but nevertheless frequently came into contact with him.

59. Plaintiff followed Defendant's published complaint procedures to notify Defendant of Tyler's ongoing harassing, offensive, and humiliating behavior, and filed multiple grievances describing said behavior; when Plaintiff inquired into Defendant's response to her complaints, she was generally informed that her grievances had been "lost."

60. Defendant took no action against Tyler to remedy his harassing and offensive conduct, and failed to take any action responsive to Plaintiff's complaints.

61. Defendant's failure to respond to employee misconduct resulted in employees continuously subjecting Plaintiff to sexual harassment that was severe, persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff that substantially interfered with her ability to perform her job.

62. Defendant condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, discipline, and instructions to its supervisory employees.

WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

    f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

    g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's companies.

    h. Grant such other and further relief as this Court deems just and proper.

## COUNT IV – SEX DISCRIMINATION

63. Plaintiff incorporates the preceding paragraphs by reference here.

64. Plaintiff brings this count against Defendant pursuant to Title VII.

65. Plaintiff's gender is female.

66. Plaintiff's job performance met Defendant's legitimate expectations.

67. That from approximately March 2011 and continuing through approximately April 2014, Plaintiff was subjected to degrading and insulting comments and other physical conduct by Defendant's employee based on her sex, female.

68. That Defendant's male employees were not subjected to degrading and insulting comments and other physical conduct based on their gender.

69. Defendant's conduct constituted impermissible discrimination on the basis of her sex, female.

70. Defendant's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's legally protected rights.

71. Defendant's retaliation against Plaintiff adversely affected the terms and conditions of her employment with Defendant.

    WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal remedies for relief:

    a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

    c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

    e. Award Plaintiff prejudgment interest.

    f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

    g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's companies.

    h. Grant such other and further relief as this Court deems just and proper.

## COUNT V - RETALIATION

72. Plaintiff incorporates the preceding paragraphs by reference here.

73. Plaintiff brings this count against Defendant pursuant to 42 U.S.C. §1981 and Title VII.

74. During all relevant times relevant herein, Plaintiff performed her assigned tasks in a satisfactory and conscientious manner according to Defendant's standards.

75. Plaintiff, pursuant to the collective bargaining agreement between her union and Defendant, was prohibited from complaining about workplace incidents directly to Defendant; instead, she was required to submit grievances to her union which pursuant to the collective bargaining agreement were communicated to Defendant.

76. Defendant, through Candiano, was aware of Plaintiff's complaints regarding the above-described behavior of Tapper, Hastings, and Tyler.

77. In 2013 and 2014, Plaintiff filed multiple grievances in response to Hastings's aforementioned conduct; when Candiano was informed of these grievances, he would refer to them as Plaintiff's "bullshit games" and inform her that "I do not have time for your bitching."

78. Following the locker break-in during which an unidentified individual scattered Plaintiff's personal belongings, Plaintiff complained about the incident to Plant Protection Services, but the incident was not investigated, no one was disciplined, and Defendant took no responsive action.

79. In approximately April 2011, Plaintiff's foot was seriously injured when it was hit by a counter-weight; after Plaintiff was injured, Candiano threatened Plaintiff with termination if she sought workers' compensation benefits in connection with her injury.

80. Following the incident in which Hastings threw a T-bar at Plaintiff, Plaintiff filed a grievance; Defendant took no action responsive to Plaintiff's grievance, and when Plaintiff attempted to follow up on her grievance, was told that her written grievance had been lost.

81. On approximately June 6, 2014, Plaintiff was terminated.

82. Employees of Defendant who were similarly situated to Plaintiff and did not complain of racial harassment and sexual harassment were not terminated.

83. Defendant's conduct placed Plaintiff in an inferior position that was materially worse than those who did not oppose racial harassment and sexual harassment.

84. Defendant's conduct in terminating Plaintiff amounts to unlawful retaliation for resisting conduct which Plaintiff believed in good faith to be racial harassment and sexual harassment.

85. The adverse action followed Plaintiff's participation in a protected activity within such a period of time as to raise an inference of retaliatory motivation.

86. Plaintiff was further subjected to illegal, inferior, and miserable terms and conditions of employment due to her race in violation of 42. U.S.C. § 1981.

87. As a result of Defendant's actions, Plaintiff lost and continues to lose salary.

88. That Defendant's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's protected rights.

89. That said retaliation directly and adversely affected the terms and conditions of Plaintiff's employment with Defendant.

90. That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income, including, but not limited to, wages, fringe benefits, seniority benefits, and other employment benefits.

WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal remedies for relief:

    a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b. Order a permanent injunction prohibiting Defendant from further acts of retaliation.

    c. Award Defendant reinstatement, lost wages, including back pay, front pay and lost fringe benefits, and including, without limitation, any lost benefits with applicable prejudgment and statutory interest.

    d. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    e. Award Plaintiff a judgment against Defendant for compensatory damages.

    f.   Grant judgment against Defendant for punitive damages for willful and wanton conduct.

    g.   Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
Trevia Johnson,

By:   /s/ John A. Singer
         Attorney for Plaintiff

Uche O. Asonye – 6209522
John A. Singer – 6317383
ASONYE & ASSOCIATES
100 N. LaSalle St., Suite 2115
Chicago, Illinois 60602
(312) 795-9110
jsinger@aa-law.com

## **JURY DEMANDED**

NOW COMES Plaintiff Trevia Johnson, by and through her undersigned attorney, and hereby demands a trial by jury in the above-entitled cause of action.

Respectfully submitted,
Trevia Johnson,

By:   /s/ John A. Singer
         Attorney for Plaintiff

Uche O. Asonye – 6209522
John A. Singer – 6317383
ASONYE & ASSOCIATES
100 N. LaSalle St., Suite 2115
Chicago, Illinois 60602
(312) 795-9110
jsinger@aa-law.com