## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| TREVIA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   NO. 2:16-CV-215 |
| ARCELORMITTAL LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss Complaint, filed by the defendants, Arcelormittal LLC, Arcelormittal USA LLC, and Arcelormittal Burns Harbor LLC, on September 2, 2016. (DE #11.)  For the reasons set forth below, the motion is **GRANTED**.  As set forth in the body of this order, the claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended are hereby **DISMISSED**, while the claims brought pursuant to 42 U.S.C. § 1981 of the Civil Rights Act of 1866, *et seq.* **REMAIN PENDING.**


BACKGROUND

The plaintiff, Trevia Johnson ("Plaintiff") filed her Complaint against the defendants, Arcelormittal LLC, Arcelormittal USA LLC, and Arcelormittal Burns Harbor LLC (collectively,

"Defendant"),[1] on June 8, 2016.  (DE #1.)  In it, she alleges claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII") and 42 U.S.C. § 1981 of the Civil Rights Act of 1866, *et seq.* ("Section 1981").  On September 2, 2016, Defendant filed the instant partial motion to dismiss, arguing that the Title VII allegations in Plaintiff's Complaint fall outside of the scope of her underlying administrative charge and should be dismissed for a failure to exhaust administrative remedies.  (DE #12.)  Plaintiff filed her response on September 16, 2016.  (DE #14.)  Defendant filed a reply on September 23, 2016.   (DE #16.)   The motion is ripe for adjudication.

DISCUSSION

Standard

     In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[2] a court must accept all facts alleged in the

---

[1]  In her response brief, Plaintiff indicates that she named all three corporate entities as defendants only to ensure that the correct party was named.  (DE #14, p. 1.)  For the sake of clarity, this order will refer to the three corporate entities collectively as one.

[2]  The failure to exhaust administrative remedies is generally considered an affirmative defense.  See *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).  In this case, Defendant has raised it as such in its Answer.  (DE #13, p. 31.)  However, the proper vehicle for moving for dismissal based on an affirmative defense is a motion for judgment on the pleadings via Federal Rule of Civil Procedure 12(c) rather than 12(b)(6).  *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010).  That said, because the practical effect is the same, and there is sufficient information before the Court to make a determination on the issue pursuant to Rule 12(c) without changing the analysis, the defense may be appropriately considered by the Court at this

complaint as true and draw all reasonable inferences in the light
most favorable to the plaintiff.  *See Parish v. City of Elkhart*,
614 F.3d 677, 679 (7th Cir. 2010) (citation omitted).  While a
complaint is not required to contain detailed factual allegations,
the plaintiff must allege facts that state a claim to relief that
is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677,
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "Threadbare recitals
of the elements of a cause of action, supported by mere conclusory
statements, do not suffice."  *Id.* at 678.  "Factual allegations
must be enough to raise a right to relief above the speculative
level . . . on the assumption that all the allegations in the
complaint are true . . . ."  *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (internal citations omitted).

When reviewing a motion to dismiss, a court generally only
considers the factual allegations of the complaint and any
reasonable inferences that can be drawn from those allegations.
See *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).
The court may examine information from documents attached to a

---

stage.  *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); see also *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n. 1 (7th Cir. 2012) ("Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint.").  The Court notes that "[a] motion under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12."  *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993).

motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis,* 742 F.3d 720, 729 (7th Cir. 2014) (quotation omitted). Such documents may be considered by the court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. *See Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013). However, this is a "narrow exception" to the general rule that consideration of extraneous material requires conversion to a summary judgment motion. *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002). When extraneous materials are presented, it is within the court's discretion either to exclude the materials and handle the case as a straightforward motion to dismiss, or to consider the materials and convert to summary judgment. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

Extraneous Materials

Plaintiff has submitted several documents for the Court to consider in ruling on the motion to dismiss: a letter sent from Defendant to Plaintiff regarding the alleged violation of a Probationary Reinstatement Agreement (DE #14-1), the administrative Complaint of Discrimination filed with the Indiana Civil Rights Commission ("ICRC") and the Equal Employment

Opportunity Commission ("EEOC")[3] (the "Charge" or the "Charge of Discrimination") (DE #14-2), notes of an interview between Plaintiff and the ICRC dated November 14, 2014 (the "Complainant Interview") (DE #14-3), a letter from a former co-worker of Plaintiff's regarding her work conditions (the "Hunter Letter") (DE #14-4), the Notice of Finding by the ICRC (DE #14-5), and the Dismissal and Notice of Rights letter from the EEOC (DE #14-6). Only the Charge of Discrimination and the Dismissal and Notice of Rights letter are mentioned in Plaintiff's Complaint. (See DE #1, p. 2.) In a footnote in her response brief, Plaintiff asks the Court to consider the attached documents because they are "directly referenced in her Complaint or describe incidents referenced in her Complaint, and which are integral to a full and complete understanding of her position." (DE #14, p. 2.) She does not elaborate on this assertion. In reply, Defendant argues that, with the exception of the Charge of Discrimination and the Dismissal and Notice of Rights letter, the documents are not referenced in her Complaint nor are they central to her claims, so they should not be considered by the Court.

It is undisputed that both the Charge of Discrimination and the Dismissal and Notice of Rights letter may be properly

---

[3] "[T]he EEOC and the ICRC have a 'Worksharing Agreement,' under which the EEOC and the ICRC have designated each other as agents for the purpose of receiving charges." *M.C. Welding and Machining Co., Inc. v. Kotwa*, 845 N.E.2d 188, 192, n. 3 (Ind. App. 2006).

considered for purposes of the instant motion without converting it to one for summary judgment. See *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). However, the Court agrees with Defendant that the remaining documents do not fall within the narrow exception articulated by the Seventh Circuit:

> In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions *a document* in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (internal quotation marks and citation omitted) (emphasis added). Plaintiff's attempt to expand the exception to include documents that simply "describe *incidents* referenced in her Complaint" goes too far. Nowhere in the Complaint are the violation letter, the Complainant Interview, the Hunter Letter, or the Notice of Finding by the ICRC even tangentially referenced. The Complaint contains allegations describing conduct relevant to her claims; while the aforementioned documents may be used as evidence in support of those factual assertions, they are not central to the claims presented. Thus, the Court declines to consider them when deciding this motion. See *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (refusing

to consider documents submitted in response to motion to dismiss because they "are not central in determining whether Defendants engaged in these acts" alleged in the complaint).  Furthermore, because consideration of these documents would not change its analysis,[4] the Court declines to exercise its discretion to convert the motion to dismiss into a motion for summary judgment.  See *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming district court's refusal to convert a motion to dismiss into a motion for summary judgment based on district court's discretion).

---

[4]  For example, the Court notes that neither the Complainant Interview nor the Notice of Finding by the ICRC describe anything other than conduct related to alleged discriminatory discharge based on race and/or sex regarding a violation of the last chance agreement. (See DE #14-3 & DE #14-5.)  Of note, the Complainant Interview describes, in detail, Plaintiff's reasons for her absenteeism which led to the violation of the last change agreement (court hearings, doctor appointments, school enrollment, etc.), all of which she claims were excused absences; it does not describe any harassment allegations whatsoever, nor does it refer to any conduct by her co-workers other than to suggest that Jeff Jellison, an individual not named in the Complaint, also violated a last chance agreement but was not terminated. (DE #14-3.)  While the Complainant Interview does mention that previous grievances were filed, it does so only in the context of Plaintiff's challenge to the violation of the last change agreement, not in reference to any retaliatory conduct. (*Id.*)  The same is true for the Notice of Finding by the ICRC, which defines the singular issue as being whether Plaintiff was terminated because of her race and/or sex for violating the last chance agreement yet similarly-situated white male employees were not. (DE #14-5.)  Simply put, these documents do not help further Plaintiff's position.  On the other hand, it is true that the Hunter Letter describes racial and sexual harassment directed at Plaintiff by her co-workers and supervisors. (DE #14-4.)  However the Court notes that Plaintiff's response brief indicates that the Hunter Letter was not submitted to the ICRC investigator until January of 2015, nearly five months after the Charge of Discrimination was filed. (DE #14, p. 8; DE #14-2.)  While it is possible that such evidence may sometimes be considered an amendment to the original EEOC charge within the meaning of 29 C.F.R. § 1601.12(b), this in only true where the information clarifies or amplifies the original allegations. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994).  As set forth in detail in the body of this order, the conduct described in the Hunter Letter is not reasonably related to the claims presented in the Charge of Discrimination, so it may not be used to expand the scope of that Charge.  See *Id.* at 502-503.

Facts

    Plaintiff, an African American female, was hired by Defendant as a "utility person" in September of 2010 and was promoted to an "operating technician" in approximately March of 2011. (DE #1, p. 2.) From March 2011 through 2014, Plaintiff alleges that she was harassed by her white co-workers Donna Tapper ("Tapper"), Calvin Hastings ("Hastings"), and others on account of her race. (*Id*. at 3-7.) Such harassment occurred on a daily or near daily basis and included verbal racial slurs, the creation of intentionally dangerous work conditions, and offensive, racially-charged conduct. (*Id*.) For example, Plaintiff alleges that Tapper routinely called her "black bitch," "nigger," and "monkey" while Hastings and other co-workers purposefully threw away her lunch, placed her personal belongings on top of a coke oven, and left notes "inscribed with racial slurs such as 'black whore,' pornographic photos of naked African-American women, and bananas and discarded banana peels, in the area in which Plaintiff took lunch breaks." (*Id*. at 5.) Although Plaintiff complained of the behavior to her Division Manager, Timothy Candiano ("Candiano"), and filed grievances pursuant to the collective bargaining agreement ("CBA") with USW Local 6787 (the "Union"), Defendant took no responsive action. (*Id*. at 2-5.)

-8-

On multiple occasions between March of 2011 and April of 2014, Hastings and several of Plaintiff's other white male co-workers regularly attempted to subject Plaintiff to disciplinary action by signing her name on an overtime request form without her permission or knowledge. When Plaintiff informed Candiano or his assistant, Mike Zmuda, that she had not been the one who added her name to the form, they insisted that she was obligated to work the shift anyway. (*Id*. at 4, 7-8.)

Plaintiff further alleges that she was subjected to unwelcome sexual advances, sexual comments, and other physical and verbal conduct of a sexual nature from co-worker Eddie Tyler ("Tyler"), an African American male. (*Id*. at 2, 9.) Specifically, Plaintiff alleges that from March 2011 through April 2014, Tyler frequently waited for her outside of the women's bathroom or near her locker in order to watch or surprise her, made offensive sexual statements to her such as "damn, you have a fat ass" and "your mouth is great enough for my dick to fit in," and exposed her to unwanted physical touching of her buttocks, breasts, and mouth. (*Id*. at 9.) Despite the fact that Plaintiff filed multiple grievances about Tyler's behavior, Defendant failed to take any responsive action. (*Id*. at 10.)

Finally, while Plaintiff was prohibited from complaining about the workplace incidents described above directly to Defendant, she submitted the grievances to the Union pursuant to

the CBA's terms, and those grievances were communicated to Defendant. (*Id*. at 12.)  Plaintiff alleges that Defendant was fully aware of the behavior of Tapper, Hastings, and Tyler due to her grievances, yet Candiano referred to them as "bullshit games," and no responsive action was taken against any of the offending co-workers.  (*Id*. at 12-13.)  Instead, Plaintiff herself was terminated on approximately June 6, 2014.[5]  (*Id*. at 13.)

In August of 2014, Plaintiff filed her Charge of Discrimination with the ICRC and EEOC.[6]  The Charge, which has the boxes for race and gender discrimination checked off, provides in full:

> On June 22, 2014, I was terminated.  I believe I have been discriminated against based on my race, African American and my sex, female because on the above mentioned date I was terminated due to violating the last chance agreement.  I am the only female employee on my crew.  Caucasian male employees have violated a last chance agreement and they were not terminated.  I am seeking all available remedies for a violation of Title VII of the Civil Rights Act of 1964, as amended and the Indiana Civil Rights Law.

(DE #14-2.)  The Charge indicates that the intake was originally received by telephone on August 12, 2014, and it was later signed

---

[5]   The complaint lists the termination date as approximately June 6, 2014; however, a number of other documents list the termination date as June 22, 2014 (see e.g. DE #14-2.)

[6]   As noted above, the Worksharing Agreement between the ICRC and the EEOC provides that the same Charge applies to both agencies even if it is only filed with one.

and affirmed by Plaintiff on August 15, 2014.  (*Id.*)  The EEOC
Dismissal and Notice of Rights letter dated March 14, 2015, adopted
the findings of the ICRC and closed its file accordingly.  (DE
#14-6.)  The Complaint before this Court was filed by Plaintiff's
attorney on June 8, 2016.  (DE #1.)


Failure to Exhaust

     A plaintiff must file a charge with the EEOC prior to filing
suit under Title VII.  *Chambers v. Am. Trans Air, Inc.*, 17 F.3d
998, 1003 (7th Cir. 1994).  In order to "prevent circumvention of
the EEOC's investigatory and conciliatory role, only those claims
that are fairly encompassed within an EEOC charge can be the
subject of a resulting lawsuit."  *Id.*  In general, "[a] plaintiff
may pursue a claim not explicitly included in an EEOC complaint
only if her allegations fall within the scope of the charges
contained in the EEOC complaint."  *Cheek v. Peabody Coal Co.*, 97
F.3d 200, 202 (7th Cir. 1996) (citation omitted).  The Seventh
Circuit has articulated a two part test to determine whether such
claims may proceed:  (1) the claim must be like or reasonably
related to the EEOC charges; and (2) the claim could reasonably
develop from the EEOC's investigation of the original charges.
*Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995) (citing
*Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167
(7th Cir. 1976)).  As to the first prong, "[c]laims are reasonably

-11-

related if there is a factual relationship between them.  At a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (internal citation omitted); see also *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).  As to the second prong, the Seventh Circuit has recognized the difficulty of applying it because speculation is often required; however, courts need not analyze the second prong when the first part of the test is not satisfied. *Cheek*, 31 F.3d at 500.

Defendant argues that because Plaintiff's Complaint contains different Title VII allegations than those submitted in the Charge of Discrimination they should be dismissed.  Plaintiff, on the other hand, argues that the Complaint states claims that are like or reasonably related to the allegations in the Charge because those claims implicate a similar time frame, the same Defendant, and similar substance to her Charge; she also argues that the claims fall within the scope of the Charge because they could have been and actually were discovered during the course of the ICRC investigation.

As an initial matter, the Court notes that, in her brief, Plaintiff cites to several cases outside of this circuit seeming to suggest that the two-pronged test outlined above is met as long as claims not included the original charge were actually discovered

-12-

in the course of an agency investigation.[7]  While that may be true in other circuits, in the Seventh Circuit it is clear that both prongs must be met in order to be properly considered.  See *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017) (first the court must ask if the claims are like or reasonably related to the EEOC charges, and, if they are, *then* the court asks whether those claims reasonably could have developed from the investigation); see also *Cheek*, 31 F.3d at 500 (finding that the court need not speculate as to the second part of the test because the first prong was not satisfied).  Any arguments to the contrary are unpersuasive.

Plaintiff's claims do not clear the first hurdle.  As noted above, at a minimum, a charge and a complaint must describe the same conduct and implicate the same individuals.  See *Ezell*, 400 F.3d at 1046.  Plaintiff asserts that they do; however, other than a broad statement that the Charge and Complaint implicate the same three year period – March 2011 through July 2014 – and "reference action taken by Defendant up to and including her July 2014 termination" in the form of "differential treatment" on the basis of race and gender, she provides no specifics to back up her argument.  The reality is that Plaintiff's Charge of Discrimination is simple and uncomplicated: she alleges that she was discriminated

---

[7]  See DE #14, pp. 5-6 (citing *E.E.O.C. v. Farmer Bros.*, 31 F.3d 891, 899 (9th Cir. 1994); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976)).

against because of her race and sex when she was terminated on June 22, 2014, for violating a last change agreement, while male Caucasian employees who also violated such agreements were not terminated.  The Charge does not reference any individuals by name or title, nor does it describe any conduct other than the discriminatory discharge itself.  As for the timeframe, in the section of the Charge asking for the date of the alleged discriminatory act, Plaintiff states "June 22, 2014" and reaffirms that date in the statement of allegations section; the Charge does not indicate that a lengthier period of time was at issue.

In contrast, Counts I and III of the Complaint contain detailed and specific claims of racial and sexual harassment. Count I includes allegations that Tapper, Hastings, and other unnamed coworkers harassed her on a near daily basis from March 2011 through 2014 by using crude and offensive racial slurs, by purposefully creating unsafe work conditions, by breaking into her personal belongings, and by attempting to subject Plaintiff to disciplinary action.  Count III alleges that Tyler subjected Plaintiff to unwanted sexual advances, sexual comments, and harassing physical and verbal conduct of a sexual nature.  Despite filing grievances pursuant to the CBA and speaking directly with Candiano, no corrective action was ever taken related to her racial or sexual harassment complaints.  Plaintiff claims that Defendant failed to maintain a harassment free work environment because it

-14-

did not provide adequate training and discipline to its employees. Similarly, Count V alleges that Plaintiff was terminated in retaliation for her earlier complaints and grievances that were filed in response to the aforementioned harassing conduct.  Count II and Count IV, on the other hand, allege racial and sexual discrimination; specifically, Plaintiff claims that she was obligated by Candiano or his assistant to work overtime shifts when her co-workers signed her name to the schedule without her knowledge and that she was subjected to pervasive discrimination on the basis of her race (in the form of coarse, crude, and offensive language and inferior treatment by various co-workers) and her sex (in the form of degrading and insulting comments and other physical conduct by Tyler).

Even giving Plaintiff the benefits to which she is entitled at this stage, none of these claims can be said to be like or reasonably related to the original Charge.  Typically, claims of sexual/racial harassment and retaliation cannot be inferred from a charge of sexual/racial discrimination simply because all of the theories relate to discrimination in some form.  See *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."); see also *Cheek*, 31 F.3d at 503

("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). It is only reasonable to link those distinct claims when they are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Sitar*, 344 F.3d at 726 (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)). Here, Plaintiff's Charge does not even hint at any conduct involving racial or sexual harassment whatsoever. It does not describe any harassing verbal or physical actions taken by co-workers, nor does it refer to a lack of corrective action by a supervisor related to those actions. It does not identify any time period other than the date of her termination, a date which is referenced with specificity in the Charge twice. Finally, the Charge does not implicate the same individuals as those described in the Complaint; in fact, as noted above, the Charge does not name any individual employees at all.[8] The harassing behavior of Plaintiff's co-workers and lack of action taken by her supervisor as described in the Complaint were certainly not subtle. In fact,

---

[8] While it has not been used as a basis for deciding this motion, the Court notes that the Complainant Interview identifies Jasper Seal and Ken Kasner as Plaintiff's supervisors (neither of whom are mentioned in the Complaint), yet it does not refer to Candiano. (DE #14-3.) Likewise, the Complainant Interview references co-worker Jeff Jellison as being an employee who was treated more favorably when he was not terminated after violating a last chance agreement, but it does not mention Tapper, Tyler, or Hastings.

they were egregious.  Plaintiff easily could have, and should have, included at least some kind of passing mention of such conduct in her Charge of Discrimination if she intended those claims to be pursued.  It follows then that the same is true for her retaliation claims – because Plaintiff's Charge fails to even tangentially reference any previous grievances made to her union and/or supervisors regarding the aforementioned harassing behavior of her co-workers, it is not reasonable to infer from it that her termination was in retaliation for those grievances.

While Count II and Count IV of the Complaint do allege racial and sexual discrimination, the nature of those allegations is very different than the single discrimination claim described in the Charge.  In the Charge, Plaintiff faults unnamed company officials for unlawfully terminating her employment on June 22, 2014, for violating a last chance agreement when Caucasian males who did the same were not terminated.  In the Complaint, she alleges that she was obligated to work additional overtime shifts that she had not sought between March of 2011 and April of 2014 and that she was subjected to racial and sexual discrimination via the actions and words of fellow employees during that timeframe.  Again, when there is no mutuality of actors or conduct, it is not proper to infer additional forms of discrimination simply because some form of discrimination was alleged.  See *Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways,

a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."); see also *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 526 (7th Cir. 2008) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) with approval and noting that, even when the parties involved are the same, a plaintiff cannot use conclusory statements of discrimination to open the door to related theories of discrimination based on "whatever facts or legal theory she may later decide upon").

Plaintiff argues that she deserves some leeway because she lacked attorney representation during the administrative proceedings.[9]  It is true that, because many EEOC charges are drafted without the assistance of an attorney, a plaintiff may be granted leniency and does not need to include each and every fact that forms the basis of her complaint in her underlying charge. See *Cheek*, 31 F.3d at 500 (citing *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)).  However, a plaintiff *is* obligated to provide enough information in the

---

[9]  Plaintiff also argues in her brief that she deserves leniency because the investigator ignored several of her allegations and because her personal life was in upheaval at the time the Charge was filed.  However, she has not presented any evidence (i.e. an affidavit based on personal knowledge or additional documents related to the initial investigation by the ICRC) that would be proper to consider at this stage.  See footnote 4, *supra*. Furthermore, the Court notes that the Charge of Discrimination was signed by Plaintiff several days after the telephone intake was completed, and no additions or changes were made by Plaintiff.  (DE #14-2.)

original charge for allegations in a later filed complaint to be construed as reasonably related to them. *Cheek,* 31 F.3d at 502 (a plaintiff must describe the alleged discriminatory conduct "with some degree of specificity"). Broad language describing one type of discriminatory conduct does not automatically lead to the inclusion of additional discriminatory claims; there must be a foundation upon which to base rational inferences. See *Sommerfield*, 863 F.3d at 648–49 (charge using general phrasing of "hostile work environment" and describing offensive remarks by one supervisor was not sufficient to encompass claims about retaliatory staffing decisions by a different group of "ill-defined" supervisors because the charge did "not provide enough information about these earlier slights to permit that kind of linkage"). As described above, Plaintiff's Charge, which delineates a claim of discriminatory discharge, simply does not provide enough details to support the much broader range of claims described in the Complaint. See *Sitar*, 344 F.3d at 726-27.

In a similar vein, Plaintiff cites several cases for the proposition that the Seventh Circuit standard for determining whether claims exceed the scope of an EEOC charge is "liberal."[10] While it is true that charges are to be viewed with liberality, the standard is certainly not unbounded. In each of the cases

---

[10] See DE #14, p. 10.

cited by Plaintiff, the court found that the allegations made in the administrative charge and the complaint involved, at a minimum, the same individuals and same conduct so that they were reasonably related. See e.g. *Miller*, 525 F.3d at 525 (citing *Cheek*, 97 F.3d at 202-03); *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831-32 (7th Cir. 2015). That cannot be said here.

Finally, Plaintiff attempts to distinguish her case from cases such as *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). In *Conner*, the court found that the plaintiff's claim of non-promotion was necessarily outside of the scope of her EEOC charges because the alleged non-promotion occurred after the charge was filed, and it would have been impossible for the EEOC to undertake the required preliminary investigation. *Id*. Plaintiff argues that her claims fall within the scope of the Charge because the Charge was filed after all of the alleged conduct occurred, so the ICRC should have been able to investigate each discriminatory and harassing act. However, the Court finds this argument unconvincing. The Seventh Circuit has continually reaffirmed that the real issue is whether the new claims involve the same conduct and people as the original EEOC charge; this is true even when all of the complained of conduct occurred prior to the filing of the charge. See *Sitar*, 344 F.3d 720, 726-27 (7th Cir. 2003). In determining that a plaintiff's

earlier sex discrimination and sexual harassment claims were procedurally barred because her EEOC charge referenced only retaliation, the Seventh Circuit found that:

> [u]nfortunately for Sitar, this is not the unusual case in which a single retaliation charge will support a broader range of claims. Sitar's sex discrimination and sexual harassment claims involve a separate set of incidents, conduct, and people, spanning over a period of time prior to the filing of her complaint and more than three months prior to her termination.  While these earlier facts may provide context and support for Sitar's later EEOC charge alleging that her termination was retaliatory, the discrimination and harassment charges are not so closely related that we can justify departing from the general rule of distinguishing among different forms of discrimination.  The fact that both INDOT and the EEOC may have been aware of her earlier, internal complaint about sex discrimination does not change the fact that she chose not to include this issue in her later EEOC charge.

*Id*. (internal citations omitted).  As described in detail above, none of Plaintiff's current claims can be said to be like or reasonably related to the original Charge.

Reading Plaintiff's Charge of Discrimination liberally, it can only fairly be said that she complained to the ICRC/EEOC of discriminatory discharge based on race and sex.  To determine otherwise would thwart the goal of giving an employer fair warning of its employees' conduct at issue and providing the employer with an opportunity to reconcile the situation without resorting to the

courts.   See e.g. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110

(7th Cir. 1992).   Thus, her Title VII claims must be dismissed.


CONCLUSION

For the reasons set forth above, Defendants' Partial Motion

to Dismiss Complaint (DE #11) is **GRANTED**.   The claims brought

pursuant to Title VII are hereby **DISMISSED**, while the claims

brought pursuant Section 1981 **REMAIN PENDING**.


**DATE: September 19, 2017**            **/s/RUDY LOZANO**
                                        **United States District Court**